**INTERSTATE FIRE INSURANCE COMPANY, a corporation, Plaintiff-Appellee,**

v.

**Robert E. HARMON et al., Defendants-Appellants.**

**No. 76–4328.**

United States Court of Appeals, Fifth Circuit.

Sept. 18, 1978.

Ira Genberg, Atlanta, Ga., for Santiago Rivera.

Sterling G. Culpepper, Jr., Montgomery, Ala., David R. Hendrick, Atlanta, Ga., for Robert Harmon and Charles Todd.

Hoyt W. Hill, Opelika, Ala., for plaintiff-appellee.

Before WISDOM, GOLDBERG and RUBIN, Circuit Judges.

WISDOM, Circuit Judge:

This insurance case was tried on a skimpy stipulation, a few exhibits, and three depositions. The question at issue was the insureds' coverage for liability for an accident that the insureds and the insurer's agent indisputably intended to cover. The district court held that there was no coverage. It construed the policy as unambiguous and excluded parol evidence of an agreement to ensure against the type of accident that occurred. As a result of the ruling, the parties did not address, and the court did not consider, the crucial question whether the agent had authority to bind the insurer by the kind of coverage that the insureds and the injured claimant rely upon.

At the Phenix City Dragway in Alabama, on August 4, 1974, Bob Pleso killed himself trying to jump his motorcycle over thirty automobiles. He landed on the twenty-eighth automobile. His motorcycle crashed into Santiago Rivera, a professional photographer covering the motorcycle jump event for a local television station. Rivera, who was seriously injured, filed a complaint seeking damages from Robert Harmon, the promoter, and Charles Todd, the lessee of the property. Civil Ac. 75–29–E. They carried insurance with the Interstate Fire Insurance Company, a company that wrote all the racing car insurance business generated by National Auto Racing Services, Inc. In this instance, Harmon and Todd purchased the policy from Mr. Jack Donahey, a fifty percent stockholder in and Executive Vice President of National Auto Racing Services, Inc.

The Interstate Fire Insurance Company (Insurance Company) then filed this action for a declaratory judgment that the policy did not cover Harmon and Todd, if Rivera recovered a judgment against them in the other action. The district court held for the Company, finding that the policy was unambiguous, parol evidence was inadmissible to vary its terms, and coverage did not extend to the liability the insureds may have incurred. We reverse and remand for proceedings consistent with this opinion.

First, the district court decided that Rivera's injury was not covered because he was not a *spectator* who had "come to the track to enjoy the spectacular"; he had not bought his ticket but had gained entrance by his press pass. He was at the track "at the direction of his employer" and therefore "was within the scope of his employment with the television station". The court then leaped to the conclusion that he fell within the excluded category of "all persons employed on or about the premises".

We are unable to follow this tortuous ratiocination.

■ The policy is divided into three sections: (1) Spectator Liability; (2) Participant Liability; and (3) Promoters Liability Coverage. The term "spectator" is not defined. Nor is there any implication that a spectator means one who has paid for a ticket to enjoy the spectacular. The organizational structure of the policy carries the inference that "spectator" is distinguished from a "participant". In ordinary language or by dictionary definition a "spectator" is simply "one who looks on or beholds; esp., one witnessing any exhibition". Webster, International Dictionary (2nd Ed.). A reporter or cameraman covering a spectacular event for the press, radio, or television is prominently a spectator.

The trial judge concluded that since Rivera was not a spectator he "clearly falls within the excluded category of "all persons employed on or about the premises". Paragraph 2(a) of the Spectator Coverage reads as follows:

2. Exclusion. The Policy excludes liability (a) To all participants, pit attendants, mechanics, stewards, and other officials and to all persons employed on or about the premises.

As we read this paragraph, the listing of specified persons who are excluded shows an intention to exclude participants and persons having a working relationship to the track. These would naturally include pit attendants, mechanics, stewards, other officials and all employed by the track or Dragway. A professional photographer employed by a third party has nothing to do with the participants and their employees or the track and its employees.

■ The district court gave "another reason for disallowing coverage". He found that the terms "automobile" and "automobile racing events" are unambiguous; they do not cover a person injured during a "motorcycle jumping event". One's first reactions might be in agreement with the district court. Close examination of the policy in the light of its factual setting requires a different conclusion.

The policy provides

"Coverage. A. To pay on behalf of the Insured, all sums which the Insured shall become legally obligated to pay as damages because of . . . (b) injury to or destruction of property caused by an *occurrence arising out of the ownership, maintenance, or use* of the described premises for the purpose of automobile racing events, including practice and trials on reported race days." (Emphasis added.)

The motorcycle jumping event was advertised as a "World Record Motorcycle Jump" to be held at the Phenix City Dragway August 4, 1974. It was "an occurrence" associated with or "arising out of the use of the premises for automobile racing". Apparently a motorcycle jump is an "extra added attraction" to the drag races, just as side-shows are part of a circus. Indeed, the inference we draw from the record is that the term "motorcycle jumps" is subsumed in the term "auto races" at rural dragways. There is little doubt that in this instance Pleso's attempt to break the world record

for motorcycle jumping was the big event of the show. It was the only event Rivera was employed to photograph. And his press pass featured,

"Bob Pleso's

___30 CAR___

World Record

Motorcycle Jump."

In this case, Donahey, the agent who issued the policy, testified that Harmon informed him that he needed coverage for the jump and he acknowledged that he insured Harmon and Todd for the jump. Moreover, he also acknowledged that he had collected a separate premium for the jump.

Donahey's testimony tends to show that he thought the policy could cover the jump, for he accepted the extra premium without altering or amending the policy. Donahey testified that the policy used was "the only type policy" he used.

Endorsement 3 of the policy is significant. This endorsement, dated the same day the policy was issued, provides:

In consideration of the payment of a race day premium of $98.00. Personal Accident and Spectator Liability coverages hereunder are extended to Grudge Runs, limited to street classes only. *Motorcycles, are excluded.*" (Emphasis added.)

If the policy provided no coverage for injuries from motorcycle events, there would be no need to exclude motorcycles from Endorsement 3. There are a number of exclusions to the spectator portion of the policy, but the term "motorcycle" is not specifically excluded except from grudge runs.

There are cases holding that the failure of an insurance company to exclude motorcycles from coverage under an "automobile" insurance policy is evidence that the term "automobile" is meant to include motorcycles. *Shipley v. American Standard Ins. Co.,* 1968, 183 Neb. 109, 158 N.E.2d 238; *Bolt v. Life & Casualty Co.,* 1930, 156 S.C. 117, 152 S.E. 766. In *National Cas. Co. v. Thompson,* 1957, 39 Ala.App. 199, 96 So.2d 708, 709, the court held "the word 'automobile' to be imprecise" and to include a forklift truck.

We conclude that the policy, read as a whole, is ambiguous, especially in light of the specific exclusion of "motorcycles" in Endorsement 3. In addition, it would appear that a one-type form of policy used by National Auto Racing Services for all events at dragways is ambiguous enough to justify the admission of evidence as to the meaning in the trade of its coverage of motorcycle jumps. We do not reach the question whether the policy, if the ambiguities are resolved to the advantage of the Insurance Company, should be reformed to accord with the insureds' and the insurer's agent's indisputable intention to cover liability for injuries caused by motorcycle jumps. On remand, the district court should admit parol evidence as to the intention of the parties with respect to coverage of liability for the motorcycle jumps.

That will not end the case.

 The crucial question to be decided is whether Donahey had real or apparent authority to bind the Interstate Fire Insurance Company, when the policy, excluding Endorsement 3, apparently applies only to coverage for liability arising out of automobile races. The parties did not raise this question. The district court had no opportunity to consider it. If the evidence should prove that coverage of motorcycle jumps was a change in the policy that neither Donahey nor National Auto Racing Services was authorized to make, the Insurance Company is not liable to the insureds in this case.

REVERSED AND REMANDED.